

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5359 | **DATE** | 5/13/2003 |
| **CASE TITLE** | Komperda vs. Hartford Life and Accident Ins. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter memorandum opinion and order. Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure is granted. The plaintiff's motion for summary judgment is denied. Judgment is hereby entered on behalf of the defendant. This case is terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 1 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 27 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | mm  courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PATRICIA KOMPERDA, Special )
Administrator for James J. Komperda, )
Deceased, )
)
        Plaintiff, ) No. 02 C 5359
)
v. ) Wayne R. Andersen
) District Judge
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY, )
)
        Defendant. )

FILED
MAY 1 3 2003
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
MAY 1 4 2003

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the cross-motions for summary judgment brought by plaintiff Patricia Komperda and defendant Hartford Life and Accident Insurance Company pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the defendant's motion for summary judgment is granted and the plaintiff's motion for summary judgment is denied.

## BACKGROUND

On October 1, 2000, the plaintiff's decedent, James Komperda, died as the result of multiple injuries he suffered when a pipe bomb he was constructing exploded prematurely. An investigation by the Will County Sheriff's Department determined that the pipe bomb explosion that caused Komperda's death occurred when he was

> putting the pipe bomb together having the end caps and the gunpowder into the pipe bomb itself and then [bringing] the drill press down in this type fashion (indicating), the drill bit coming into the head of the cap of the end cap of the bomb; and at that time with the friction and the gunpowder, the pipe bomb in

fact exploded, blowing him up.

(Def. 56.1 Stmt. at ¶ 13.)

During their investigation, the Will County Sheriff's Department interviewed Mike Jajkowski, a fried of Komperda, who stated that he was with Komperda when Komperda started making pipe bombs a month before the explosion. Initially, Komperda made the pipe bombs by filling PVC pipes with black powder, capping the ends of the pipe, and inserting a cannonball wick after drilling a hole in the end cap. (Def. 56.1 Stmt. at ¶ 15.) The first bomb that Komperda made had a wick approximately 15 to 20 feet long "so they could be a safe distance away from the bomb before it blew up." (Def. 56.1 Stmt. at ¶ 16.) After the two men detonated the first pipe bomb, Jajkowski was "somewhat scared because of the large explosion." (Def. 56.1 Stmt. at ¶ 17.) In addition, Jajkowski "further advised that one of the PVC pipe bombs was partially completed at his residence by himself and James [Komperda], however, he did not want to have any of that stuff at his house so he never allowed James to finish any of the bombs at his home again." (Def. 56.1 Stmt. at ¶ 18.) Apparently, this statement forced Komperda to continue his bomb making in his own garage, eventually concluding with the explosion that took his life in October 2000.

At the time of his death, the decedent was a participant in Central Steel and Wire Company's employee welfare benefit plan. The plan is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, through its purchase of group insurance issued by defendant Hartford Life and Accident Insurance Company ("Hartford") to Central Steel and Wire Company's health plan trust. (Def. 56.1 Stmt. at ¶ 5.) Under the plan's basic life insurance coverage, a participant's

beneficiaries receive payments when the participant dies (from any cause) while covered by the program. Additional coverage is also provided under the accidental death, dismemberment and loss of sight provision when death occurs from injuries caused solely by "accident." These benefits are paid if the participant dies while insured and the "loss results directly from such injury, independent of all other causes. . . ." (Def. 56.1 Stmt. at ¶ 9.) Accidental death benefits are not available, however, when death is caused by injuries that were "intentionally self-inflicted . . . ." (Def. 56.1 Stmt. at ¶ 10.)

The decedent was enrolled in both of these plans in the amount of $10,000 each. He designated his wife, the plaintiff in this case, as the beneficiary. On February 13, 2001, Central Steel and Wire Company submitted a claim to Hartford for life insurance benefits in the amount of $10,000 and accidental death benefits in the amount of $10,000, payable to the plaintiff. On June 8, 2001, Hartford notified the plaintiff in writing that her request for accidental death benefits had been denied. (Def. 56.1 Stmt. at ¶ 24.) Hartford's explanation of the decision to deny the accidental benefits was two-fold. Hartford first reasoned that Komperda's death was a reasonably foreseeable consequence of his construction of a pipe bomb and, thus, his death was not the result of an accidental injury independent of all other causes. (Def. 56.1 Stmt. at ¶ 27.) In addition, Hartford concluded that because Komperda constructed the pipe bomb of his own volition, the intentionally self-inflicted injury exclusion precluded recovery of accidental death benefits under the policy.

On July 25, 2001, the plaintiff appealed Hartford's denial of accidental death benefits. On August 21, 2001, according to the terms and conditions of the policy, Hartford paid general life insurance benefits to the plaintiff in the amount of $10,000. On October 19, 2001,

Hartford denied the plaintiff's appeal and upheld its prior decision to deny accidental death benefits. (Def. 56.1 Stmt. at ¶ 31.)

On June 26, 2002, the plaintiff filed a complaint in the Circuit Court of Cook County seeking payment of the accidental death benefits. On July 30, 2001, Hartford removed the case to federal court pursuant to 28 U.S.C. § 1441.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelley & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548 (1986).

In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the non-moving party and should not make credibility determinations or weigh evidence. *Association Milk Producers, Inc. v. Meadow Gold Dairies, Inc.*, 27 F.3d 268, 270 (7th Cir. 1994). The non-moving party must support its contentions with admissible evidence and may not rest upon mere allegations in the pleadings or conclusory

4

statements in affidavits. *Celotex*, 477 U.S. at 324. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Anderson*, 477 U.S. at 252. In situations, such as here, when the facts are largely uncontested and the issues are legal ones, the parties' cross-motions present an opportunity for resolution of these issues without the need for trial.

## I. Preliminary Issues

In her complaint, the plaintiff has essentially brought an ERISA claim against Hartford for the recovery of accidental death benefits which she feels the estate is entitled to receive. In her initial brief in support of her cross-motion for summary judgment, however, the plaintiff for the first time raised two breach of fiduciary duty claims against the defendant. Specifically, she has alleged that Hartford breached its fiduciary duty to the plaintiff by misrepresenting the self-inflicted injury exclusion in its original denial of the accidental death benefits claim. She also has asserted that Hartford breached its fiduciary duty by failing to administer the benefit plan in accordance with the plan documents. However, it is settled law in this circuit that, on a motion for summary judgment, it "is too late in the day to be adding new claims." *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997); *see also Greisz v. Household Bank*, 8 F. Supp. 2d 1031, 1041-42 (N.D. Ill. 1998) (refusing to consider new allegations for the first time at the summary judgment stage); *Teall v. City of Chicago*, 986 F. Supp. 1098, 1101 (N.D. Ill. 1997) (holding that a new claim raised on a motion for summary judgment is "not properly before th[e] court" and refusing to consider that claim). The parties agreed in open court that the only legal issues going

5

forward in the case would center around whether Hartford was justified in its decision to withhold accidental death benefits after the tragic pipe bomb explosion. The plaintiff's breach of fiduciary duty arguments are outside the scope of both this agreement and the literal language of the complaint. Therefore, the breach of fiduciary duty claims will not be addressed by this Court in considering the cross-motions for summary judgment.

## II. Hartford's Denial of Accidental Death Benefits

### I. <u>Standard of Review</u>

In light of ERISA's governance of the benefit plan at issue in this case, we must look to that statute's standard of review. The Supreme Court has held that "a denial of benefits under [ERISA] is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989) (emphasis added). When, as here, an ERISA benefits plan grants such authority to a plan administrator, this Court must review the denial of benefits under the arbitrary and capricious standard. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

It is undisputed that the plan provides that Hartford "has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy." (Hartford Insurance Benefits Plan at 3.) Because this language clearly gives Hartford the discretion to make benefits determinations and construe the terms of the plan, the plaintiff can only prevail if Hartford's decision to deny accidental death benefits was arbitrary

and capricious.

The Seventh Circuit has described the arbitrary and capricious standard as "the least demanding form of judicial review of administrative action." *Trombetta v. Cragin Fed. Bank First Sav. Employees Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). The standard necessitates a deferential review of the administrator's decision that is limited to the administrative record. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999). An administrator, empowered with such a high level of authority, enjoys a "broad, unchanneled discretion to deny claims." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000). Consequently, an administrator's decision must be more than "clearly incorrect, but downright unreasonable" to be deemed arbitrary and capricious. *Mortion v. Smith*, 91 F.3d 867, 870 (7th Cir. 1996) (citation omitted).

In evaluating an administrator's action, the Seventh Circuit has urged that the judicial focus be on whether the decision of the administrator can be characterized as a rational one. *See Exbom v. Central States S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1143 (7th Cir. 1990). If the administrator has made "a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached, then the [administrator's] decision is final." *Id.* In the context of this case, we need not determine whether we would have come to the same conclusion as Hartford or even have depended on the same authority on which the company relied. *See James v. General Motors Co.*, 230 F.3d 315, 317 (7th Cir. 2000). Instead, we need only find that Hartford's decision was not so "downright unreasonable" to be deemed arbitrary and capricious. *Morton*, 91 F.3d at 870.

7

B.  Review of Hartford's Decision

We now address whether Hartford's decision to deny the plaintiff's accidental death benefits claim can be sustained under the arbitrary and capricious standard of review. Under this standard, we evaluate the following factors that the Seventh Circuit set forth in *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1340, 1344 (7th Cir. 1995):

> [T]he impartiality of the decision making body, the complexity of the issues, the process afforded the parties, the extent to which the decision makers utilized the assistance of experts where necessary, and finally the soundness of the fiduciary's ratiocination.

The first four factors require us to examine the detail in which the administrator examined the facts surrounding the decision. In this case, there is little disagreement about the factual situation involved or the opportunity for Komperda to address Hartford regarding the reasons for its decision. While it is true that the plaintiff has argued in her motion that Hartford either disregarded or failed to properly consider the determination of the coroner's jury that the cause of death was "accidental," the undisputed evidence shows that Hartford reviewed the entire claim file, including the coroner's reports and jury findings, before rendering its final decision. (Def. 56.1 Stmt. at ¶ 24.) Thus, the central dispute between the parties in this case revolves around the last *Chalmers* factor – the soundness of Hartford's "ratiocination" to deny Komperda's claim for accidental death benefits based on its interpretation of the term "accidental injury."

Hartford argues in its motion for summary judgment that the decedent's death was not an "accident" within the terms of the plan because he voluntarily drilled into a metal pipe packed with gunpowder. Further, as stated in its motion, Hartford determined that Komperda's death was not an "accident" because it was not "an unforeseeable event," but instead was a

8

"circumstance where it is reasonably foreseeable that death will occur." (Def. Memo at 8-9.) Hartford insists that this interpretation is consistent with the opinions of numerous courts. *See, e.g., Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104 (7th Cir. 1998) (car crash was not an "accident" because it was a reasonably foreseeable consequence of driving while extremely intoxicated); *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990) (discussing the difficulties courts have in deciding what constitutes an accident, and finding that death was not accidental when it was the foreseeable result of voluntary hazardous conduct). Thus, Hartford maintains that because the decedent knew or should have know that death or serious bodily injury was substantially likely to occur as the result of his foolhardy pursuits, his demise was reasonably foreseeable and not accidental.

The plaintiff challenges Hartford's decision to deny accidental death benefits as arbitrary and capricious on the grounds that the defendant's interpretation of the term "accident" was "downright unreasonable." *Morton*, 91 F.3d at 870. Specifically, she has asserted that the analysis of whether an incident was "accidental" should be much more subjective than what Hartford has suggested in its papers. Citing the Seventh Circuit's decision in *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456 (7th Cir. 1997), she argues that the proper inquiry is "the subjective expectation or intent of the decedent" when deciding whether a fatal incident can be classified as an "accident." As an aside, we note that the court in *Santaella* was employing a *de novo* standard of review, and, as we stated above, the standard of review in this case is the arbitrary and capricious standard.

In order to resolve the dispute between the parties on the issue of the correct interpretation of the term "accident" in this case, we turn to the Seventh Circuit's decision in

*Cozzie*. In that case, the court was faced with an analogous fact pattern and its analysis of the applicable standard of review with respect to those facts is dispositive of the issues presented here. In *Cozzie*, the defendant, MetLife, denied the plaintiff's ERISA claim for the recovery of accidental death benefits after the plan participant died as the result of an alcohol-induced car crash. *Cozzie*, 140 F.3d at 1106. At the time of the crash, the decedent's blood alcohol level was more than twice the legal limit. *Id.* MetLife denied the claim for accidental death benefits on the basis that the car crash was not an "accident" under the terms of the plan because "it was reasonably foreseeable that [the plan participant], having ingested the quantity of alcohol that he did ingest, would suffer a fatal injury if he got behind the wheel of an automobile in such a state of inebriation." *Id.* at 1108.

Since the plan in *Cozzie* gave MetLife discretionary authority to construe the plan's terms, the Seventh Circuit applied the "extremely deferential" arbitrary and capricious standard of review to MetLife's decision. *Id.* at 1111. Accordingly, the Seventh Circuit acknowledged that the plan gave MetLife the discretion to define the term "accident." Specifically, the court stated that "the definition given the term 'accident' by MetLife is not incompatible with the interpretation that has been given that term in other insurance contexts." *Id.* at 1109. Using the approach articulated in the First Circuit, the Seventh Circuit stated that "[i]f the insured did not believe that the result would occur, we must consider whether such an estimation can be considered reasonable. If the expectations of the insured were objectively reasonable, then injuries or death resulting therefrom are not accidental." *Id.* at 1110. (citing *Wickman*, 908 F.2d at 1088). The court concluded that, "in light of the reasoning underlying the definition," MetLife's definition of "accident" was not "downright unreasonable." *Id.*

Undoubtedly aware of the court's ruling in *Cozzie*, Hartford in this case used the discretionary authority granted it under the terms of the plan to define the term "accident" in a way that is virtually identical to that approved by the *Cozzie* court. In both *Cozzie* and the instant case, the plan administrators interpreted the term "accident" to be an event that is "not reasonably foreseeable" and they determined that a death resulting from an act in which death is a reasonably foreseeable consequence is not an "accident independent of all other causes" under the terms of the policies. Such a determination is certainly rational given the factual situation Hartford was presented with when it considered this accidental death benefit claim.

The undisputed facts in this case demonstrate that Mr. Komperda had a fascination with homemade explosives. He would fill a pipe, either metal or plastic, with gunpowder, place a long wick into the end of the device, set it in the middle of a field, and watch it blow up. On the day in question, things did not work out as planned. While he was in his garage trying to drill into the metal casing of the pipe to insert the wick, a spark apparently ignited the gunpowder and the device exploded in his face. We do not need an expert's report to tell us that drilling into anything filled with gunpowder without the proper training and safety equipment is an extremely dangerous, if not potentially lethal, endeavor. We agree with Hartford that death is a reasonably foreseeable consequence of engaging in such behavior. Thus, we find that Hartford's decision to deny accidental death benefits in this case was based on "a 'rational connection' between the issue to be decided, the evidence in the case, the text under consideration, and the conclusion reached." *Exbom*, 900 F.2d at 1143.

On the other side of the equation, the plaintiff offers an alternative definition for the term "accident." She contends that whether something is an accident is inherently a subjective

11

analysis. To her, an accident is an event the result of which is unintended from the perspective of the participant. With respect to this case, the plaintiff has argued that the explosion was an accident because her husband did not intend to die when he drilled into the explosive laden pipe. While we agree with the plaintiff that her definition of "accident" is a reasonable one (and, in fact, has been adopted by some courts), our job in this case is not to decide which definition of "accident" is best. In fact, our opinion on that question is irrelevant. Instead, our role in this case is solely to decide whether Hartford's definition was "downright unreasonable," given the facts and evidence, under the arbitrary and capricious standard of review. As we have already stated above, we find that Hartford's interpretation of the plan term "accident" was reasonable and, therefore, we conclude that its decision to deny accidental death benefits was neither arbitrary nor capricious.

Finally, as a result of this conclusion, it is not necessary for us to address whether the decedent's injury was "intentionally self-inflicted" within the meaning of the plan.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is granted. The plaintiff's motion for summary judgment is denied. Judgment is hereby entered on behalf of the defendant. This case is terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: _____